Ms. Debra L. Romanello Attorney for the Hillsborough County City-County Planning Commission 401 South Florida Avenue Tampa, Florida 33602
Dear Ms. Romanello:
This is in response to your request for an opinion on substantially the following questions:
 1. WHETHER SPECIFIC AMENDMENTS TO COMPREHENSIVE PLANS IN HILLSBOROUGH COUNTY MUST BE SUBMITTED FOR REVIEW TO THE DEPARTMENT OF COMMUNITY AFFAIRS.
 2. WHETHER THE HILLSBOROUGH COUNTY CITY-COUNTY PLANNING COMMISSION IS REQUIRED TO HOLD A HEARING ON SPECIFIC AMENDMENTS TO COMPREHENSIVE PLANS.
 3. WHETHER SPECIFIC AMENDMENTS TO COMPREHENSIVE PLANS IN HILLSBOROUGH COUNTY STILL REQUIRE THE CONCURRENCE OF A FOUR-FIFTHS MAJORITY OF THE GOVERNING BODY.
Your questions all involve the interpretation and application of provisions of the Hillsborough County Local Government Comprehensive Planning Act of 1975, Ch. 75-390, Laws of Florida, as amended by Ch. 77-564, Laws of Florida, in light of the enactment of the Local Government Comprehensive Planning and Land Development Regulation Act, Ch. 85-55, Laws of Florida, making substantial revisions to ss. 163.3161-163.3211, F.S., the Local Government Comprehensive Planning Act of 1975. Accordingly, your questions are related and will be answered together.
The Hillsborough County City-County Planning Commission was created by Ch. 78-523, Laws of Florida, and charged with the responsibility for preparing comprehensive plans and recommending any changes to adopted comprehensive plans for Hillsborough County and the municipalities therein, subject to the procedural requirements of Ch. 75-390, Laws of Florida, as amended by Ch. 77-564, Laws of Florida. The commission is the local land planning agency for purposes of, inter alia, public hearings to be held as part of the adoption process for a comprehensive plan or amendments thereto. Sections 6 and 11, Ch. 75-390, supra. See, Ch. 78-523, supra. Section 12 of Ch. 75-390, supra, provides that the procedure for amendment of an adopted comprehensive plan shall be as for the original adoption of the plan "unless a four-fifths majority of the governing body adopts a specific amendment to an adopted land use element of a comprehensive plan other than a comprehensive amendment to the land use element of a comprehensive plan." Section 12 further defines a specific amendment as "one which proposes to change a use in the land use element of the adopted comprehensive plan or proposes to change residential density on a parcel or parcels of land . . . provided that either the change in land use or residential density comprise less than 5 percent of the land area of the jurisdiction involved," and further deems all other amendments to the land use element to be comprehensive amendments. Thus, Ch. 75-390, supra, provides for a bifurcated plan amendment process requiring the adoption of comprehensive amendments by the same procedure as for adoption of the original plan, while specific amendments may be adopted by an abbreviated procedure as long as a super-majority of the governing body votes in favor of the amendment.
As originally enacted by Ch. 75-257, Laws of Florida, the Local Government Comprehensive Planning Act of 1975 also included a distinction as to procedures for comprehensive and specific plan amendments. As subsequently amended and codified at s. 163.3187, F.S. 1983, the act provided that amendment of an adopted comprehensive plan or element or portion thereof shall be by the same procedure as for the original adoption of the plan or element or portion thereof, "other than for a future land use plan element or portion thereof involving less than 5 percent of the total land area of the local governmental unit," and further specified that the procedure for amendment was governed by s. 163.3184, F.S., except with respect to amendments involving less than 5 percent of the total land area of the local governmental unit, where the procedure provided in s. 163.3184(7)(b), F.S., controlled. Section163.3184(1), F.S., required submission of plans and amendments thereto to the state land planning agency and further operated to require that local planning agencies, such as the Hillsborough County City-County Planning Commission, hold a public hearing on such plans and amendments. See, s. 163.3184(1)(e), F.S. But see, AGO 83-15, concluding that submission of amendments to a future land use element involving less than 5 percent of a local governmental unit's land area to the state land planning agency was not required pursuant to s. 163.3184(1)(a), F.S., since s.163.3187 specified that s. 163.3184(7)(b) controlled the adoption procedure for such amendments. Cf., s. 163.3164(18), F.S. 1983 (renumbered as subsection [19] by s. 2, Ch. 85-55, Laws of Florida), defining "state land planning agency" as the Department of Community Affairs.
Thus, the Local Government Comprehensive Planning Act of 1975, as amended, provided for a bifurcated procedure for amendments to an adopted comprehensive plan in a manner which paralleled that of Ch. 75-390, Laws of Florida, distinguishing between comprehensive and specific amendments. It required submission of amendments to a future land use element involving 5 percent or more of the total land area of the local governmental unit to the state land planning agency and further required public hearings by local governing bodies for both types of amendments. However, your letter of inquiry informs me that both the Hillsborough County City-County Planning Commission and the Department of Community Affairs have interpreted the super-majority requirement of s. 12 of Ch. 75-390, supra, for adoption of specific amendments by affected local governing bodies "as obviating the need for submission of specific plan amendments to the state and regional planning agencies, and for the conduct of a public hearing by the [Commission], so long as a four-fifths majority of the governing body agrees to the proposed amendment." See, s. 17, Ch. 75-257, supra, codified at s. 163.3211, F.S., providing that "the provisions of this act shall govern unless the provisions of this act are met or exceeded by other provision or provisions of law relating to local government." And see, AGO 80-83, concluding that the provisions of Ch. 75-390, supra, as amended, should be read together and harmonized with the provisions of the Local Government Comprehensive Planning Act of 1975 since both statutes were enacted by the 1975 Legislature and should be considered to be in pari materia. See also, s. 163.3184(7)(a), F.S. 1983, providing for the adoption of comprehensive plans, elements, or portions thereof "in a manner prescribed by law." (e.s.) But see, AGO 75-280, concluding that s. 17, Ch. 75-257, supra, means that local laws relating to growth planning in a particular locality may provide additional requirements or procedures, such as additional notifications or hearings.
The enactment of Ch. 85-55, Laws of Florida, substantially revising ss. 163.3161-163.3215, F.S., effective October 1, 1985, has created uncertainty as to the continued validity of the bifurcated procedures provided for by Ch. 75-390, Laws of Florida, as to specific and comprehensive amendments to adopted comprehensive plans or elements or portions thereof. Section 9 of Ch. 85-55, supra, deletes the provision for an alternative procedure for amendments of land use elements or portions thereof pursuant to s. 163.3184(7)(b), F.S. 1983, and now specifies that "[t]he procedure for amendment of an adopted comprehensive plan or element or portion thereof shall be as for the original adoption of the comprehensive plan or element or portion thereof set forth in s. 163.3184." Section 163.3184, F.S., as amended by s. 8 of Ch. 85-55, supra, no longer provides for adoption of a comprehensive plan or element or portion thereof "in a manner prescribed by law" and no longer includes in subsection (7)(b), an adoption procedure (made applicable to amendments by s. 163.3187, F.S.) for a portion of a land use element involving less than 5 percent of the total land area of the local government unit. Instead, s. 163.3184(15), F.S., as amended, now provides for adoption of comprehensive plans (and amendments, pursuant to s. 163.3187) "in the manner prescribed by this subsection" (e.s.) and further requires the local governing body to "hold at least two advertised public hearings on the proposed comprehensive plan, plan element, or plan amendment." (e.s.) And see, s. 163.3184(1)(a), F.S., as amended by s. 8 of Ch. 85-55, supra, providing in pertinent that, "before the adoption of an amendment to a previously adopted comprehensive plan or element or portion thereof, the governing body shall . . . [t]ransmit 5 copies of the proposed comprehensive plan or element or portion thereof to the state land planning agency for written comment." (e.s.) Moreover, in view of the deletion of s.163.3184(7)(b), F.S. 1983, and the specific reference thereto in s. 163.3187, it would appear that the provisions of s. 163.3184(1) are now applicable to all amendments to previously adopted comprehensive plans or elements or portions thereof, including the provision in s. 163.3184(1)(c), F.S., as amended, that the governing body shall determine that the local planning agency has held a public hearing thereon. Compare, AGO 83-15, discussed supra.
Ordinarily, the rule in Florida is that a special act prevails over a general law to the extent of any conflict. Rowe v. Pinellas Sports Authority, 461 So.2d 72 (Fla. 1984); State ex rel. Johnson v. Vizzini, 227 So.2d 205 (Fla. 1969); Adams v. Culver,111 So.2d 665 (Fla. 1959). However, a general statute covering an entire subject matter, and manifestly designed to embrace all the regulations of the subject, may supersede a former statute covering only a portion of the subject when such is the manifest intent. State v. Dunmann, 427 So.2d 166 (Fla. 1983); Sparkman v. State ex rel. Bank of Ybor City, 71 So. 34 (Fla. 1916). Thus, a complete legislative revision of a subject may serve as an implied repeal of earlier acts dealing with the same subject to the extent of irreconcilable inconsistency or repugnancy. Oldham v. Rooks,361 So.2d 140 (Fla. 1978); City of Miami v. Kichinko, 22 So.2d 627
(Fla. 1945); Zedalis v. Foster, 343 So.2d 849 (2 D.C.A. Fla., 1976). See, AGO 85-67. Moreover, the intent of the Legislature is the law. Department of Legal Affairs v. Sanford-Orlando Kennel Club, Inc., 434 So.2d 879 (Fla. 1983); Parker v. State,406 So.2d 1089 (Fla. 1981). It would appear that the legislative intent with respect to the enactment of Ch. 85-55, Laws of Florida, is readily discernible, generally, from the provisions of s. 163.3161, F.S., declaring legislative intent and brought forward pursuant to s. 20 of Ch. 85-55, supra. More particularly, legislative intent is discernible from the amendments to statutory law enacted therein, especially s. 8, which amended s. 163.3184, F.S., to provide in subsection (15) thereof that the procedure for adoption of a comprehensive plan, element, or portion thereof (as made applicable to amendments generally by s. 9, amending s. 163.3187, F.S.) shall be in the manner *2417 provided by that subsection, rather than the more general reference to adoption in a manner prescribed by law, such as Ch. 75-390, Laws of Florida, as amended, with respect to Hillsborough County. An additional indication of legislative intent with respect to distinctions between comprehensive and specific amendments is manifest in the deletion of the alternative procedure for certain amendments. See, s. 9 of Ch. 85-55, supra, amending s. 163.3187, F.S. See also, House Committee on Natural Resources, Staff Analysis of CS/HB 287 (May 1, 1985), at p. 4. And see, s. 17, Ch. 85-55, supra, amending s. 163.3211, F.S., to provide that the provisions of the Local Government Comprehensive Planning and Land Development Regulation Act shall govern in the event of conflict with any other provision or provisions of law unless the provisions of the act are met or exceeded by such other provisions of law.
While Ch. 75-390, Laws of Florida, as amended, is presumptively valid unless and until judicially determined otherwise, I am unable to conclude that such provisions of that act as purport to authorize local governing bodies within Hillsborough County to adopt specific amendments to the land use element of an adopted comprehensive plan without submission to the state land planning agency and without determining that the local planning agency has held a public hearing on such amendments meet or exceed the provisions of Ch. 85-55, Laws of Florida, requiring submission of amendments generally to the state land planning agency and requiring the local governing body to determine that the local planning agency has held a public hearing on such amendments. Accordingly, I am of the view that all amendments to comprehensive plans or elements or portions thereof in Hillsborough County must be submitted for review to the Department of Community Affairs as the state land planning agency and that local governing bodies must determine that the Hillsborough County City-County Planning Commission as the local planning agency has held a public hearing on any such amendment prior to adoption thereof.
Finally, with respect to your third question, I am unable to conclude that a four-fifths majority vote of a governing body has ever been required for the adoption of an amendment to a comprehensive plan or element or portion thereof, pursuant to s. 12 of Ch. 75-390, Laws of Florida. By its terms, that section is not applicable "unless" a distinction is made between types of amendments for purposes of abbreviated procedures. Subsection (8) of s. 11 of Ch. 75-390, supra, has always required a vote of "not less than a majority of the total membership of the governing body" to adopt a comprehensive plan "or adopt it with changes or amendments." Thus, the four-fifths majority is not a requirement for adoption of an amendment which is subject to the same procedure as for the original adoption of the comprehensive plan. As I have concluded that the manifest legislative intent evidenced by Ch. 85-55, Laws of Florida, is that there is no longer any distinction between types of amendments, all amendments are thus subject to the same procedural requirements and thus may be adopted by "not less than a majority of the total membership of the governing body." Accordingly, no amendments to comprehensive plans in Hillsborough County require the concurrence of a four-fifths majority of the governing body.
In sum, then, and unless and until legislatively or judicially determined otherwise, it is my opinion that all amendments to comprehensive plans in Hillsborough County must be submitted for review to the Department of Community Affairs, that local governing bodies must determine that the Hillsborough County City-County Planning Commission has held a public hearing on any such amendment prior to adoption thereof, and that no amendments to comprehensive plans in Hillsborough County require the concurrence of a four-fifths majority of the governing body.
Sincerely,
Jim Smith Attorney General
Prepared by:
Kent L. Weissinger Assistant Attorney General