Mr. C. Mitchell Goldman Indian River County Hospital District 200 South Biscayne Boulevard, Suite 3410 Miami, Florida 33131-2397
Dear Mr. Goldman:
On behalf of the Indian River County Hospital District, you ask substantially the following question:
Does the Indian River Memorial Hospital, Inc., a not-for-profit corporation leasing the Indian River Memorial Hospital from the Indian River County Hospital District, possess sovereign immunity pursuant to section 768.28, Florida Statutes?
In sum:
Indian River Memorial Hospital, Inc., is not acting primarily as an instrumentality of the Indian River County Hospital District in its operation of the Indian River Memorial Hospital such that it has sovereign immunity under section 768.28, Florida Statutes.
The Indian River County Hospital District (district) was created by special act of the Legislature as an independent special taxing district.[1] In 1984, the district entered into an agreement with the Indian River Memorial Hospital, Inc. (corporation) for the corporation's lease of hospital facilities and operation and management of the Indian River Memorial Hospital.[2] In a previous opinion, this office recognized that the district and the corporation at that time also executed an agreement for indigent care within the district.[3]
The Indian River Memorial Hospital, Inc., was formed as a private not-for-profit corporation. Previously, this office acknowledged that the corporation was not formed by the district or any other governmental agency, that the district receives no money from the corporation other than payments for the care provided to indigent county residents, and that the district provides no other governmental function.[4] In order for Indian River Memorial Hospital, Inc., to qualify for its exemption from federal income taxes, its articles of incorporation had to provide that should it dissolve, its assets would be transferred to another tax-exempt facility. The district is designated as that entity, with the county receiving title in the event the district is no longer in existence.
While this office previously concluded that the corporation is subject to the Sunshine and Public Records Laws[5] when it is engaged in the operation and management of the hospital, the criteria for making such a determination are different than those used to determine whether a private entity is primarily acting on behalf of a public agency.[6]
Though the corporation, through its lease with the district, made itself subject to the Sunshine and Public Records Laws, the question of whether it may avail itself of the protections of sovereign immunity must be evaluated by determining if the corporation is acting on behalf of the district in its operation and management of the hospital.
Section 768.28, Florida Statutes, in accordance with section 13, ArticleX of the Florida Constitution, waives sovereign immunity for the state and its agencies and subdivisions to the extent specified therein. Monetary limitations are prescribed in the statute allowing payment of a judgement against the state or its agencies and subdivisions.[7]
State agencies or subdivisions, by definition, within the scope of section 768.28, Florida Statutes, include: "independent establishments of the state; counties and municipalities; and corporations primarily actingas instrumentalities or agencies of the state, counties, ormunicipalities."[8] (e.s.) Thus it must be determined if the corporation is primarily acting as an instrumentality or agency of the district.
This analysis has been judicially considered to depend upon whether the day-to-day operations of the entity are subject to extensive governmental control.[9] The First District Court of Appeal, in Shands TeachingHospital and Clinics, Inc. v. Lee by and Through Lee, looked to federal law, by analogy, to find that the critical factor in determining whether an entity is an agency for purposes of sovereign immunity is the existence of governmental control over the "detailed physical performance" and "day to day operation of that entity."[10] The Shands
court evaluated the legislation that organized the hospital, finding that the state was authorized to lease the facility to a private nonprofit corporation, which was directed to conduct a study and develop a plan to become more self-sufficient and fiscally independent. The court concluded that the Legislature's intent was to treat Shands, the corporation managing and operating the hospital, as an autonomous and self-sufficient entity, not primarily acting as an instrumentality on behalf of the state.
In another case, the First District Court of Appeal evaluated the statutes creating the Prison Rehabilitative Industries and Diversified Enterprises (PRIDE) to determine whether that entity was acting primarily as an instrumentality of the state.[11] The court found numerous provisions for extensive governmental control over PRIDE's day-to-day operations and the state's continuing interest in assuring the continuity and stability of the program. The court concluded that even though "PRIDE was accorded substantial independence in the running of the work programs, its essential operations nevertheless remained subject to a number of legislatively mandated constraints over its day-to-day operations."[12]
I would note that section 155.40, Florida Statutes, authorizing the sale or lease of hospitals by a county, district or municipality, states:
"(6) Unless otherwise expressly stated in the lease documents, the transaction involving the sale or lease of a hospital shall not be construed as: (a) A transfer of a governmental function from the county, district, or municipality to the private purchaser or lessee; (b) Constituting a financial interest of the public lessor in the private lessee; or (c) Making a private lessee an integral part of the public lessors, decisionmaking process. (7) The lessee of a hospital, pursuant to this section or any special act of the Legislature, operating under a lease shall not be construed to be "acting on behalf of" the lessor as that term is used in statute, unless the lease document expressly provides to the contrary."
In this instance, you have not brought to my attention any portion of the lease between the district and the corporation that expressly provides that the corporation is acting on behalf of the district in its management and operation of the hospital. Moreover, there is no indication that the day-to-day operation of the hospital by the corporation is subject to any governmental control by the district. You have asked whether the terms of the lease between the district and the corporation may be fashioned to subject the corporation to the sovereign immunity protections in section 768.28, Florida Statutes. Clearly, in section 155.40, Florida Statutes, the Legislature has expressed an intent to allow a governmental entity to lease a hospital to a private entity and, by the terms of the lease, expressly provide that the private lessee is acting on behalf of the governmental entity. However, no such terms exist in the lease at issue in your question.
Accordingly, it is my opinion that the Indian River Memorial Hospital, Inc., does not possess sovereign immunity as a result of its operation and management of the hospital under the present lease with the Indian River County Hospital District.
Sincerely,
Robert A. Butterworth Attorney General
[1] Chapter 61-2275, Laws of Florida, as amended by Chs. 71-688, 72-568, 74-499, 76-387, and 84-451, Laws of Florida.
[2] See, Ch. 84-451, Laws of Florida, amending the district's enabling legislation to provide that the district's board of trustees is authorized to lease, as lessee or lessor, such health facilities in or through which the district provides health and medical facilities. Andsee, s. 155.40(1), Fla. Stat., allowing any district hospital organized and existing under the laws of this state to sell or lease such hospital to a for-profit or not-for-profit Florida corporation, and to enter into leases or other contracts with a for-profit or not-for-profit Florida corporation for the purpose of operating and managing such hospital and any or all of its facilities of whatsoever kind and nature.
[3] See, Op. Att'y Gen. Fla. 91-99 (1991).
[4] Id.
[5] See, s. 286.011 and s. 119.07, Fla. Stat.
[6] See, News and Sun-Sentinel Company v. Schwab, Twitty HanserArchitectural Group, Inc., 596 So.2d 1029 (Fla. 1992), setting forth such factors as: the level of public funding; commingling of funds; whether the activity is conducted on publicly-owned property; whether the services contracted for are an integral part of the public agency's decision-making process; whether the private entity is performing a governmental function; the extent of the public agency's involvement with, regulation of, or control over the private entity; whether the private entity was created by the public agency; whether the public agency has a substantial financial interest in the private entity; and for whose benefit the private entity is functioning. Compare, Prison RehabilitativeIndustries v. Betterson, 648 So.2d 778 (Fla. 1st DCA 1994) and ShandsTeaching Hospital and Clinics, Inc. v. Lee, By and Through Lee,478 So.2d 77 (Fla. 1st DCA 1985).
[7] Section 768.28(5), Fla. Stat., limits a judgment by any one person to $100,000 and limits any claim or judgment that, when totaled with all other claims paid by the state arising out of the same incident or occurrence, to $200,000.
[8] Section 768.28(2), Fla. Stat.
[9] See, e.g., Prison Rehabilitative Industries v. Betterson,648 So.2d 778 (Fla. 1st DCA 1994) and Shands Teaching Hospital andClinics, Inc. v. Lee, By and Through Lee, 478 So.2d 77 (Fla. 1st DCA 1985) (teaching hospital treated by legislature as autonomous and self-sufficient entity, not subject to direct control by the state, was not primarily acting as an instrumentality on behalf of the state).
[10] 478 So.2d 77, 79 (Fla. 1st DCA 1985).
[11] See, n. 9, supra.
[12] 648 So.2d at 780.